## J. F. SKELTON V. THE STATE.

No. 10010.   Delivered February 2, 1927.

### 1.—Murder—Evidence—Res Gestae—Properly Admitted.

Where on a trial for murder, there was no error in permitting the state to prove that immediately after shooting deceased the appellant jumped over his garden fence and pursued a young man named Underwood, who was with the deceased at the time of the homicide. This act of appellant being clearly a part of the res gestae, it was properly admitted in evidence.

### 2.—Same—Evidence—Cross-Examination of Wife—Held Error.

Where on a trial for murder, it was error to permit the state to prove by appellant's wife that four days prior to the homicide she had written a letter to her sister, complaining of appellant's conduct toward her, and her children, in which she also stated that she guessed he would kill Clarence Smith (the deceased) if he ever does get a chance. Such evidence was the opinion of the witness, and was highly prejudicial to appellant. See Drake v. State, 29 Tex. Crim. App. 265, and other cases cited.

### 3.—Same—Evidence—Suspended Sentence—Rule Stated.

Where appellant had asked a suspended sentence, it was error to permit the state to prove that he had previously had difficulties with two different men; had tried to cut one with a knife, and drew a gun on the other. The suspended sentence law makes no change in the settled rules of regarding proof of general reputation.

### 4.—Same—Continued.

The application for a suspended sentence puts his general reputation as a law-abiding citizen in the case as an issue, and only proof of such general reputation is admissible. It cannot be established by proof of specific acts of misconduct or the commission of specific offenses. Overruling Hollman v. State, 223 S. W. 209. Following Overby v. State, 92 Tex. Crim. Rep., and other cases cited.

### 5.—Same—Evidence—Impeaching Witness—Rule Stated.

While it is permissible to impeach a witness by showing conflicting statements made by such witness at another time, the proof should be restricted to statements denied on the trial, and those extraneous matters embraced in such former statement, which are not binding on appellant, should be excluded. For the errors above indicated the cause is reversed and remanded.

Appeal from the District Court of Hopkins County. Tried below before the Hon. J. M. Melson, Judge.

Appeal from a conviction of murder, penalty eight years in the penitentiary.

The opinion states the case.

*Ramey & Davidson* of Sulphur Springs, for appellant. On cross-examination of wife, appellant cites: Mitchell v. State,

179 S. W. 116; Blake v. State, 194 S. W. 1064; Young v. State,. 127 S. W. 1058; Briscoe v. State, 222 S. W. 249, and Bell v. State, 213 S. W. 647.

*Sam D. Stinson*, State's Attorney, and *Robert M. Lyles*, Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction in the District Court of Hopkins County of murder, punishment eight years in the penitentiary.

That appellant killed deceased is not disputed, and the only question for the jury appeared to be whether the homicide was murder or manslaughter. Appellant claimed to have been so aroused from what he deemed insulting conduct of the deceased toward his daughter, at the time of the homicide, as to render his mind incapable of cool reflection. He testified as did his wife and daughter that on the morning of the day of the homicide he was informed for the first time by his wife of a number of acts on the part of the deceased and another young man toward the fifteen year old daughter of appellant, of such nature as to greatly arouse and excite his anger and rage. Appellant was near his house on his way to a well to get some water when he discovered the presence of deceased and the other young man referred to, in the road near his house. He went hastily to the house, got a shot gun, went down into the garden, fired at the two young men, and, according to a state witness, then jumped over the fence and pursued one of the young men who ran a short distance, shooting at him again, and then came back to the place where deceased was lying and struck him over the head with the barrel of his gun several times.

We have examined all the bills of exception and complaints made by appellant of the various acts of procedure appearing in the record, and are of opinion that save those discussed none of the others present any error. We do not think appellant entitled to have the indictment quashed, the case on this point being controlled by the opinion in Tom Gentry v. State, No. 10000, handed down on January 19, 1927. The act of appellant in jumping over his garden fence and pursuing young Underwood was part of the res gestae and proof of that fact was clearly admissible. We perceive no error in the admission of the statement made by appellant in the nature of a confession.

Appellant's bill of exceptions No. 5 shows that after his wife had testified at length to statements made by her to him on the morning of the homicide, and to the fact that she had never

told him of these things before, and the effect her story produced upon him in the way of arousing and exciting and enraging him, she was asked if she had not written a letter to her sister on the 22nd of July, 1925, four days prior to the homicide, in which she made the following statement:

"John (meaning defendant) wont let us go anywhere since we were up here. We sure have had it since we came back; he asked Earnest about it when he was here and Earnest told him all about them boys being up there; he has done had one fight over it and I guess he will kill Clarence Smith if he ever does get a chance at him; he says if he finds out I knew they were up there he will kill me too so guess we will have it sure enough when ma leaves. I sure have seen a world of trouble since I saw you last but I am trying to live so if he does take my life I am ready to go, but it is sure hard and all the time fussed at. I could write and tell you more but will wait."

Appellant objected to this for many reasons. In our opinion the testimony should not have been received. The entire effort of appellant was to have the jury believe him guiltless of a malicious killing and that they should find him guilty only of manslaughter. The opinion of his wife, expressed in this letter, to the effect that before the homicide she had said that she guessed he was going to kill Clarence Smith if he ever got a chance at him, would seem inadmissible. See Drake v. State, 29 Tex. Crim. App. 265; Morton v. State, 43 Tex. Crim. Rep. 533; Theriot v. State, 89 Tex. Crim. Rep. 428, 231 S. W. 777; Jones v. State, 89 Tex. Crim. Rep. 571, 232 S. W. 847. Said statement which was but the opinion of the witness was strongly calculated to influence the jury toward the existence of malice on the part of appellant at the time the letter was written. The entire statement in said letter tends to show that in the opinion of the writer appellant was making life very hard for her, and that she was afraid of him and feared he might kill her, and that he was all the time fussing at her, and said statement was likely to excite a feeling of animosity in the breast of the jury toward appellant.

The state was permitted to prove by this witness that appellant had had trouble with Bill Perser, and tried to cut him with a knife, and other details of said difficulty; also that he had trouble with Roscoe Anderson and drew a gun on him, etc., etc. Appellant objected to this testimony. The court qualifies the bills by saying that he admitted same as affecting the right to suspended sentence. The testimony should not have been admitted. We have tried to make clear that the suspended sentence law makes no change in the settled rules regarding proof of general repu-

tation, and that, as affecting the right of suspended sentence, proof from either side must be as to the general reputation of the accused for being a peaceable and law-abiding citizen. We have also said repeatedly that proof of specific acts of misconduct or the commission of specific crimes or details thereof, is not admissible as directly combating the good reputation of the accused. When one accused of crime files application for suspended sentence, this puts his general reputation as a law-abiding citizen into the case as an issue. Overby v. State, 92 Tex. Crim. Rep. 172, 242 S. W. 213. This issue can be attacked or supported by the testimony of any witness who qualifies as to his knowledge of such general reputation, and this whether the accused has taken the witness stand or not. Whenever the purpose is to attack the general reputation of the accused for being peaceable and law-abiding, let it be plainly understood that this can not be done, in the first instance, by proof of specific acts of misconduct or the commission of specific offenses. We have often said that on cross-examination of witnesses to general reputation, they may be asked as to their having heard of specific acts of misconduct on the part of the accused at variance with the character ascribed to him by such witnesses, the purpose of such questions being to thus weaken the force of the testimony of such witnesses. See Sweeny v. State, 205 S. W. 335; Bride v. State, 218 S. W. 763; Baker v. State, 87 Tex. Crim. Rep. 308; Wagley v. State, 87 Tex. Crim. Rep. 504; Johnson v. State, 91 Tex. Crim. Rep. 582; Townsley, 103 Tex. Crim. Rep. 508. In this connection our attention is attracted to what we said on this point in Hollman v. State, 223 S. W. 209, where we seem to have held that such proof of specific misconduct was admissible for the direct purpose of attacking the right of the accused to suspended sentence. We think what we there said was erroneous, and to that extent said case is overruled.

Only so much of the written statement of the witness Bessie Skelton, made before a justice of the peace soon after the commission of the alleged homicide, would be admissible as related to material matters of which inquiry had first been made of her, followed by her denial. Examining her written statement so made which appears in the record in its entirety, we observe that what she said therein regarding what Clyde Underwood or Clarence Smith or her step-mother had said to her,—would hardly seem binding on appellant and should not have been admitted.

The other matters complained of have all been examined and we are of opinion that same manifest no error.

For the errors mentioned the judgment will be reversed and the cause remanded.    *Reversed and remanded.*